IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | |
|---|---|
| DAVID McCANN and KIRK LAUNIUS,<br><br>         Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, U.S. Attorney General,<br>in her official capacity as United States<br>Attorney General,<br><br>         Defendant. | Civil Action No. 4:25-CV-1424-Y |

**BRIEF IN SUPPORT OF DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This case relates to the provisions at 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(l) which restrict the possession of firearms in certain federal facilities. Plaintiffs claim that these restrictions are unconstitutional to the extent they would prohibit Plaintiffs from carrying firearms at United States Postal Service post offices or properties. At the time Plaintiffs filed their complaint, they also filed a motion for summary judgment which notes that this issue was previously decided against the government in *Firearms Policy Coalition, Inc. v. Bondi*, 805 F. Supp. 3d 721 (N.D. Tex. 2025). The basis for Plaintiffs' summary-judgment request is an argument that Defendants should now be "estopped from enforcing 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(l) against Plaintiffs to this case since their claims are identical to plaintiffs in *Firearms Policy Coalition, Inc.*" (Doc. 6 at 1.) As explained below, however, Plaintiffs' motion should be denied.

## I.     Background

Plaintiffs' complaint (Doc. 1) filed on December 17, 2025 is the live pleading and recites that in the prior *Firearms Policy Coalition* case, another judge in this district (Chief Judge O'Connor) found that 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(l) "place unconstitutional restraints on plaintiffs' right to bear arms in violation of the Second Amendment," and therefore granted relief that was "limited . . . to the plaintiffs in that case, members of the Firearms Policy Coalition and the Second Amendment Foundation." (Doc. 1, ¶¶ 1, 2.) Plaintiffs in the current case note that they "are not members of either organization involved in the previous case," but that they "would carry their firearms into the post office if it were not for the threat of enforcement" of § 930(a) and § 232.1(l). (Doc. 1, ¶¶ 3, 42.)

In their summary-judgment motion, Plaintiffs do not present substantive legal arguments directed at the underlying legal issue of § 930(a)'s and § 232.1(l)'s constitutionality under whatever the relevant test is for Second Amendment claims. Instead, Plaintiffs rely on the doctrine of collateral estoppel and argue that after the decision in *Firearms Policy Coalition* awarded relief to the plaintiffs in that case based on the court's determination there that § 930(a) and § 232.1(1) were "'unconstitutional as-applied to carrying firearms inside an ordinary post office or on post office property,'" (Doc. 6 at 5 (quoting *Firearms Policy Coalition*, 805 F. Supp. 3d at 727)), the "government should be estopped from arguing otherwise," (Doc. 6 at 5).

## II.    Legal Standard

Summary judgment is only appropriate when there is no genuine issue of material

**Brief in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment – Page 2**

fact and the movant shows an entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.

### III. Argument and Authorities

Plaintiffs seek summary judgment based on an estoppel theory—specifically, Plaintiffs rely on the doctrine of nonmutual collateral estoppel, by arguing that Defendants cannot relitigate the constitutionality of § 930(a) and § 232.1(l) after the decision in *Firearms Policy Coalition*.  But as discussed below, Plaintiffs are incorrect that any form of estoppel applies, and they fail to show an entitlement to judgment at this early stage of the case.

**A.   Nonmutual collateral estoppel does not apply against the government.**

"The principle of offensive nonmutual collateral estoppel . . . is that if a litigant has fully and fairly litigated an issue and lost, then third parties unrelated to the original action can bar the litigant from re-litigating that same issue in a subsequent suit," if certain requirements are met.  *Phillips v. City of Dallas*, 781 F.3d 772, 782 (5th Cir. 2015) (internal quotation marks and citation omitted).

There is an important caveat to the doctrine of nonmutual collateral estoppel, though:  it does not apply against the federal government.  As the Fifth Circuit has explained, the Supreme Court's decision in *United States v. Mendoza*, 464 U.S. 154 (1984), "held that nonmutual collateral estoppel cannot be used against the government." *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 322 (5th Cir. 1984).  The Supreme Court identified several considerations supporting this exception to the doctrine.  First, the Court "found that 'a rule allowing nonmutual collateral estoppel against the government

. . . would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue.'" *Id.* at 322–23 (quoting *Mendoza*, 464 U.S. at 160). The Supreme Court also explained that "'[a]llowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari.'" *Id.* at 323 (quoting *Mendoza*, 464 U.S. at 160).

Additionally, "the Court also noted that application of nonmutual estoppel against the government would force the government to appeal every adverse decision in order to avoid foreclosing further review." *Id.* (internal quotation marks and citation omitted). "Such a rule would tax the government's limited resources and further crowd the dockets of the courts." *Id.*

The Supreme Court further explained that "[t]he conduct of government litigation in the courts of the United States is sufficiently different from the conduct of private civil litigation in those courts so that what might otherwise be economy interests underlying a broad application of collateral estoppel are outweighed by the constraints which peculiarly affect the government." *Id.* (quoting *Mendoza*, 464 U.S. at 162–63).

To sum up, under *Mendoza*, and as discussed by the Fifth Circuit in *Sun Towers*, the doctrine of nonmutual collateral estoppel is not available against the government.[1] Therefore, Plaintiffs fail to show any entitlement to summary judgment.

---

[1] The defendant in *Sun Towers* was the Secretary of Health and Human Services, and the defendant here is a different Department head—the Attorney General. This brief simply refers to the "government" given the well-established rule that "suits against federal officers in their official capacity are really suits against the government." *Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010).

**Brief in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment – Page 4**

B.     **Plaintiffs' contrary arguments are unavailing.**

Plaintiffs do attempt to argue that the rule announced in *Mendoza* should not apply here, but these arguments are not supported by any binding authority and also are not logically sound.

Plaintiffs first attempt to distinguish *Mendoza* on the ground that "[u]nlike the plaintiff in *Mendoza*, Plaintiffs here seek relief in the *same* district" as the prior decision they are relying on, and therefore "[w]hatever benefit there may be to allowing percolation of issues between *different* courts, that benefit simply does not exist with regard to decisions in the *same* court." (Doc. 6 at 6–7.)  But in *Mendoza*, the first case had been decided in the Northern District of California, and the later case in which the plaintiff attempted to use nonmutual collateral estoppel was in the Central District of California.  *See Mendoza*, 464 U.S. at 155; *In re Mendoza*, 672 F.2d 1320, 1322 (9th Cir. 1982) (underlying decision).  Both cases, then, could ultimately filter up to the Supreme Court only through a single court, the Ninth Circuit.

Therefore, if Plaintiffs were correct that the determinative factor in allowing or not allowing nonmutual collateral estoppel against the government is whether the result would allow for the "percolation of issues between different courts," (Doc. 6 at 7 (emphasis removed)), the outcome of *Mendoza* should have been to *allow* for the application of nonmutual collateral estoppel in that case.  After all, from the Supreme Court's perspective, both decisions at issue in *Mendoza* could only come to the Supreme Court through a single lower court, the Ninth Circuit.  Thus, barring the use of nonmutual offensive collateral estoppel in *Mendoza* would not have served the interest of allowing

issues to percolate in the different courts whose judgments the Supreme Court reviews (i.e., in the circuit courts). Yet the Supreme Court nonetheless ruled as it did.

Indeed, the Supreme Court remarked in *Mendoza* that one reason not to apply nonmutual collateral estoppel against the government was to avoid "depriv[ing] [the Supreme Court] of the benefit it receives from permitting several courts of appeals to explore a difficult question before" it is considered by the Supreme Court. *Mendoza*, 464 U.S. at 160. But notwithstanding this remark and the fact that the two decisions at issue in *Mendoza* were both from within the Ninth Circuit—and therefore it was not the kind of situation that would allow for "several courts of appeals" to opine on the relevant legal issues—the Supreme Court ruled that nonmutual collateral estoppel still was not available. This shows that while the desire to allow multiple courts of appeals to weigh in on an issue is *one* reason that the Supreme Court declined to extend nonmutual collateral estoppel to the government, it is *not* the only reason. Rather, as the Supreme Court expressed, there also is an interest in not "freezing the first final decision rendered on a particular legal issue," which is a consideration that applies regardless of which district the first, second, and subsequent cases raising the issue are in. *See id.* at 160.

Moreover, *Mendoza*'s recognition that the Supreme Court benefits from allowing issues to percolate in the different courts of appeals applies with equal force to the analogous situation of when a court of appeals may benefit from having issues similarly percolate in the district courts. The *Mendoza* decision therefore does not support Plaintiffs, and Plaintiffs' attempt to distinguish *Mendoza* as limited to cases in different districts fails.

**Brief in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment – Page 6**

Plaintiffs also cannot show that any relevant authority supports their argument. Plaintiffs rely on a decision of the Alaska Supreme Court that declined to extend *Mendoza* to local governments, as well as decisions of the Second Circuit and Pennsylvania Supreme Court that did the same. (Doc. 6 at 7.) But these cases are distinguishable because they did not involve the federal government and therefore did not trigger the same kind of nationwide issues that arise when the question is whether to apply nonmutual collateral estoppel against the federal government. *Cf. Mendoza*, 464 U.S. at 162–63 (highlighting the unique nature of "the conduct of government litigation in the courts of the United States" as compared to private litigation). Plaintiffs also note that two federal circuit court decisions, from the Ninth Circuit and Eleventh Circuit, cut against even the claim that *Mendoza* applies only to the federal government, because those courts have found *Mendoza* to apply also to state governments. (Doc. 6 at 7 (citing *State of Idaho Potato Comm'n v. G & T Terminal Packaging*, 425 F.3d 708 (9th Cir. 2005); *Hercules Carriers, Inc. v. Florida*, 768 F.2d 1558 (11th Cir. 1985)).) In the end, Plaintiffs cite no case in which a court found that *Mendoza* somehow contains an unexpressed carve-out for decisions within a single district.[2]

Plaintiffs' argument—that the *Mendoza* rule should not apply when the earlier decision was from the same district as the later case—has also not been accepted in past

---

[2] *Trump v. Casa, Inc.*, 606 U.S. 837 (2004), does not support Plaintiffs. (*See* Doc. 6 at 7.) In that case, the Supreme Court expressed its disapproval of the notion that a single district court could adjudicate the effect of a challenged government law or policy as to "*anyone*," as opposed to just the parties to a case. *CASA*, 606 U.S. at 837. Nonmutual collateral estoppel likewise represents an attempt to extend the binding force of a single court's ruling far beyond the parties to any particular case—precisely the sort of thing that the Supreme Court warned against in *CASA*.

cases in which nonmutual collateral estoppel has been attempted against the government in this district. *See Davis v. Berkebile*, No. 3:07-CV-734-B, 2008 WL 2522502, at *1, *9 (N.D. Tex. June 13, 2008) (relying on *Mendoza* and refusing to apply nonmutual collateral estoppel based on an earlier Northern District of Texas case decided adversely to the government); *Griffin v. Berkebile*, No. 3:07-CV-730-B, 2008 WL 623343, at *1, *9 (N.D. Tex. Mar. 5, 2008) (same). To be sure, these decisions are simply the decisions of another district court within this district, rather than binding precedent. But likewise, the *Firearms Policy Coalition* case does not itself have binding effect, and Plaintiffs' estoppel argument fails for the same reasons explained in *Davis* and *Griffin*.

Plaintiffs next argue that "allowing the federal government to relitigate the constitutionality of its policies to produce different outcomes within the same district would lead to chaos, where the applicability of federal regulations could be different between next-door neighbors."[3] (Doc. 6 at 7.) Maybe so, in the sense that some "chaos" or at least inconsistency might arise when different district courts within the same district consider multiple lawsuits against the government raising the same issue. But for multiple reasons, Plaintiffs are nonetheless wrong to suggest that this means nonmutual collateral estoppel must therefore apply.

First, as alluded to above, it is well established that "federal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court." *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S.

---

[3] Notably, though, the *Firearms Policy Coalition* decision involved an as-applied challenge to the statute and regulation, which is not inconsistent with some possible variation in results of other cases due to the specific circumstances presented in any given case. *See* 805 F. Supp. 3d at 726.

410, 428 (2011). Yet that kind of precedential authority is what Plaintiffs' rule would essentially create in cases involving the government. There is no sound reason that a single district judge's decision should be effectively binding against the government merely because that judge was the first to rule on an issue.

Second, the court of appeals exist for a reason. Even if there is some temporary inconsistency between and among decisions within a single district, that inconsistency is exactly that—temporary. It can be sorted out and resolved by the court of appeals, which does have the ability to render a precedential decision and thereby put the legal issue to rest, at least within that circuit.

Third, experience shows that it simply is not the rule that nonmutual collateral estoppel operates against the government within a single judicial district in the manner Plaintiffs suggest. For example, up until very recently, there were dramatic inconsistencies between decisions within this district on the issue of whether aliens who entered the country unlawfully are subject to mandatory detention when placed in removal proceedings, or instead are entitled to bond hearings in immigration court. *Compare Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938, at *2 (N.D. Tex. Jan. 28, 2026) (ruling against the government on this issue), *with Guzman-Diaz v. Noem*, No. 3:25-CV-3008-X-BN, 2026 WL 309938, at *5–*6 (N.D. Tex. Feb. 5, 2026) (ruling in the government's favor on this issue (while recognizing that "the majority of district courts to have reviewed this issue" had decided it against the government, *see id.* at *1)). Notwithstanding the "flood" of litigation in the district relating to this issue, *see George v. Noem*, No. 3:25-CV-2935-S-BW, 2025 WL 3852946, at *2 (N.D. Tex. Dec. 19, 2025),

**Brief in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment – Page 9**

*rec. adopted*, 2026 WL 30829 (N.D. Tex. Jan. 5, 2026), no judge ever suggested, to the undersigned's knowledge, that the first adverse decision rendered in the district against the government on this topic somehow controlled the outcome of all the other cases. To the contrary, decisions continued to be issued either for or against the government, until the Fifth Circuit has more recently resolved an appeal that established precedent on the relevant statutory question. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026). That is how the system is supposed to work. And just as nonmutual collateral estoppel had no role in the outcomes at the district court level in the immigration cases discussed above, it has no role in Plaintiffs' case.

This leads to one final point. The decision in *Firearms Policy Coalition* is currently on appeal. *See Firearms Coalition Policy, Inc. v. Bondi*, No. 25-11328 (5th Cir.). As a matter of prudence and in the interest of overall efficiency and preserving this Court's judicial resources, it is respectfully submitted that awaiting further guidance from the Fifth Circuit may be beneficial. Given that this case is at such an early stage (it was only filed in December 2025), it seems likely that allowing this litigation to proceed in the normal course may facilitate the eventual narrowing or even definitive resolution of some or all of the issues presented in this case based on how the Fifth Circuit rules in *Firearms Policy Coalition*.

### IV.     Conclusion

Plaintiff's motion should be denied.

        Respectfully submitted,

        Ryan Raybould
        United States Attorney

        /s/ Brian W. Stoltz
        Brian W. Stoltz
        Assistant United States Attorney
        Texas Bar No. 24060668
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242-1699
        Telephone:  214-659-8626
        Facsimile:  214-659-8807
        brian.stoltz@usdoj.gov

        Attorneys for Defendant

### Certificate of Service

On March 13, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

        /s/ Brian W. Stoltz
        Brian W. Stoltz
        Assistant United States Attorney

**Brief in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment – Page 11**